Gregory GOTTSACKER and New Jersey LLC,
Plaintiffs-Respondents,

v.

Julie A. MONNIER, Paul Gottsacker and 2005 New
Jersey LLC, Defendants-Appellants.†

Court of Appeals

*No. 03–0457. Submitted on briefs September 25, 2003.—
Decided January 14, 2004.*

2004 WI App 25

(Also reported in 676 N.W.2d 533.)

† Petition to review granted 6-8-04.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Paul R. Erickson*, of *Gutglass, Erickson, Bonville, Seibel & Falkner, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James O. Conway*, of *Olsen, Klost, Gunderson & Conway* of Sheboygan.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Julie A. Monnier (Julie), Paul Gottsacker (Paul) and 2005 New Jersey LLC appeal a judgment compelling them to return commercial real estate to New Jersey LLC, and further ordering New

Jersey LLC to reimburse Gregory Gottsacker (Gregory) for legal expenses. The appellants argue that the trial court erred in determining that they were precluded from transferring real estate owned by New Jersey LLC to 2005 New Jersey LLC by the conflict of interest rules under WIS. STAT. §§ 183.0402 and 184.0404 (2001–02).[1] We disagree and affirm the decision of the trial court.

## FACTS

¶ 2. Julie formed New Jersey LLC on September 4, 1998. Ten days later, New Jersey LLC purchased property located at 2005 New Jersey Avenue in the city of Sheboygan. This property is a 40,000 square-foot warehouse with a single manufacturing tenant on a year-to-year lease. A limited appraisal valued the property at $703,000 and New Jersey LLC purchased it for $510,000, with financing arranged for and guaranteed by Julie.

¶ 3. In January 1999, Gregory and Paul became members of New Jersey LLC. The Member's Agreement states in relevant part:

(2) The Members have not agreed to make any additional contributions to the Company.

. . . .

(4) Julie A. Monnier shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

(5) Paul Gottsacker and Gregory Gottsacker, collectively, shall own a 50% interest in the capital, profits and losses of Company and shall have 50% of the voting rights of Company.

---

[1] All references to the Wisconsin Statutes are to the 2001–2002 version unless otherwise noted.

¶ 4. New Jersey LLC also purchased property on Wilson Avenue in Sheboygan. The Wilson Avenue property was subsequently sold and the proceeds of that transaction were distributed as follows: fifty percent to Julie, twenty-five percent to Paul, and twenty-five percent to Gregory. After the Wilson Avenue sale, New Jersey LLC's only remaining asset was the 2005 New Jersey Avenue property (the property).

¶ 5. Relationships between the members deteriorated and in May 2000, Paul and Gregory had a falling out. Communication between them after that was almost nonexistent. Julie testified that she has had no communication with Gregory since 1998.

¶ 6. On June 7, 2001, Julie executed a Warranty Deed transferring the New Jersey LLC property to a new limited liability corporation called 2005 New Jersey LLC. The new entity consists of two members: Julie with a sixty percent ownership interest and Paul with a forty percent interest in 2005 New Jersey LLC.

¶ 7. 2005 New Jersey LLC acquired the New Jersey Avenue property for $510,000, the same price paid by New Jersey LLC in the original transaction almost three years earlier. The only documentation of the conveyance is the deed and a transfer return.

¶ 8. After the transaction, Julie sent a check for $22,000 to Gregory, which purportedly represented his twenty-five percent interest in the equity from the property previously owned by New Jersey LLC. The $22,000 payment to Gregory issued from the New Jersey LLC checking account. Gregory did not cash the check. Julie and Paul did not receive any cash payment from the transfer of the property, choosing instead to leave the equity in 2005 New Jersey LLC.

¶ 9. Gregory sued Julie, Paul and 2005 New Jersey LLC, claiming that they had engaged in an illegal transaction under Chapter 183 of the Wisconsin Statutes. The trial court agreed. Julie, Paul and 2005 New Jersey LLC appeal, asking that we reverse the decision of the trial court and dismiss Gregory's complaint. We deny their request and affirm the trial court order.

## DISCUSSION

¶ 10. Gregory claims that Paul and Julie violated Chapter 183 when they implemented the transfer of the property to their new entity, 2005 New Jersey LLC. The application of a statute to a particular set of facts is a question of law. *State v. Piddington*, 2001 WI 24, ¶ 13, 241 Wis. 2d 754, 623 N.W.2d 528. We review questions of law independently, without deference to the trial court. *State v. Moline*, 229 Wis. 2d 38, 40, 598 N.W.2d 929 (Ct. App. 1999).

¶ 11. Paul, Julie, and Gregory formed New Jersey LLC as a vehicle to own investment real estate. They entered into a Member's Agreement, which expressed their intent to operate under the Wisconsin Limited Liability Company Law. In doing so, they created a legal relationship described in Wis. Stat. § 183.0102(10) and consistent with their operating agreement under § 183.0102(16). A limited liability company (LLC) is similar to a corporation in that it has a separate legal identity from those who own it. An LLC can own property, engage in business, and sue and be sued. Wis. Stat. §§ 183.0106, 183.0701. Unlike a corporation, however, an LLC has members instead of shareholders. Members control the business through a manager or by voting according to their percentage of ownership. Wis. Stat. §§ 183.0401, 183.0404.

¶ 12. Gregory alleges that Paul and Julie, when voting to transfer the property from New Jersey LLC, had a material conflict of interest and derived an improper personal profit from transfer of the property. He argues that, because there was a conflict of interest, Paul and Julie were precluded from voting to transfer the property by Wis. Stat. § 183.0404(3). The trial court agreed, ruling that

> the conveyance of the sole asset of New Jersey LLC to the newly created limited liability company denominated 2005 New Jersey LLC did not serve a legitimate business purpose. The sole purpose of the conveyance was to eliminate the interest of Gregory Gottsacker in the asset. Because the conveyance served no legitimate business purpose and because Julie Monnier and Paul Gottsacker both profited from the transaction, they were precluded by the conflict of interest rules under Chapter 183 Wis. Stats., from authorizing the transaction.

¶ 13. On appeal, Paul and Julie assert that they had no conflict of interest in implementing the transfer of the property from New Jersey LLC to 2005 New Jersey LLC. A conflict of interest is a "real or seeming incompatibility between one's private interests and one's public or fiduciary duties." BLACK'S LAW DICTIONARY 295 (7th ed. 1999). We look to the transaction to determine whether such an incompatibility existed.

¶ 14. First, we conclude that Paul and Julie did advance their private interests by transferring the property to their new company. Paul and Julie, as 2005 New Jersey LLC, acquired the property at a price equal to that paid three years prior by New Jersey LLC. However, Julie's ownership interest in the property went from fifty percent to sixty percent, and Paul's from

twenty-five percent[2] to forty percent. Paul and Julie also furthered their goal of eliminating Gregory's interest in the property.[3]

¶ 15. Next, we look to see if this advancement of private interest was incompatible with their duties as members of New Jersey LLC. Limited liability company member duties have been characterized as "typical fiduciary duties" pertaining to fair dealing, taking of improper personal profit, and self-dealing. JOSEPH W. BOUCHER ET AL., LLCs AND LLPs: A WISCONSIN HANDBOOK (rev. ed. 1999) at § 1.19. Because they were fiduciaries of New Jersey LLC, Paul and Julie could not place themselves in a position antagonistic to the LLC. *See Cmty. Nat'l Bank v. Med. Benefit Adm'rs, LLC*, 2001 WI App 98, ¶ 11, 242 Wis. 2d 626, 626 N.W.2d 340. We conclude, however, that Paul and Julie did indeed take a position that was antagonistic to New Jersey LLC. Their transaction took the sole remaining asset from New Jersey LLC without determining the fair market value and without notice to the sole remaining LLC member, Gregory. Because this transaction pitted Paul

[2] A separate issue raised in this appeal relates to the terms of the Member's Agreement, where the terms describe Gregory and Paul as holding a fifty percent interest "collectively." The dispute centers around whether each brother owned a distinct twenty-five percent interest, or whether they each owned the full fifty percent as partners. For purposes of this analysis, we use the twenty-five percent figure, which is consistent with the percentage used to distribute proceeds from the sale of the Wilson Avenue property.

[3] Testimony indicated that Paul felt Gregory "didn't live up to what we originally agreed to from day one" and Julie felt it was difficult to manage the New Jersey Avenue property with one member of the LLC refusing to communicate with the rest.

and Julie's personal interest against their fiduciary duties to New Jersey LLC, we conclude that a conflict of interest did exist.

¶ 16. We now consider whether that conflict of interest precluded Paul and Julie from voting to transfer the property from New Jersey LLC to 2005 New Jersey LLC. WISCONSIN STAT. ch. 183 states in pertinent part:

> **(1)** Unless otherwise provided in an operating agreement or this chapter . . . an affirmative vote, approval or consent as follows shall be required to decide any matter connected with the business of a limited liability company: ·
>
> (a) If management of a limited liability company is reserved to the members, an affirmative vote, approval or consent by members whose interests in the limited liability company represent contributions to the limited liability company of more than 50% of the value . . . .
>
> . . . .
>
> **(3)** Unless otherwise provided in an operating agreement, if any member is precluded from voting with respect to a given matter, then the value of the contribution represented by the interest in the limited liability company with respect to which the member would otherwise have been entitled to vote shall be excluded from the total contributions made to the limited liability company for purposes of determining the 50% threshold under sub. (1)(a) for that matter.

WIS. STAT. § 183.0404.

¶ 17. This section does not define when a member would be "precluded from voting with respect to a given matter" under subsection (3). Gregory would have us look to WIS. STAT. § 183.1101 for guidance. This section states that a lawsuit may be filed when members who

675

represent more than fifty percent of the ownership interest vote to authorize it. *See* § 183.1101(1), Wɪs. Sᴛᴀᴛ. § 183.0404(1)(a). The statute further states that "the vote of any member who has an interest in the outcome of the action that is adverse to the interest of the limited liability company shall be excluded." Sec. 183.1101(1). Gregory argues that because § 183.1101(1) excludes members from voting when they have an adverse interest and because § 183.0404(3) also refers to members who are precluded from voting, "it would appear to follow that members who are precluded from voting are members with a conflict of interest."

¶ 18. We have stated that courts should seek to construe statutes so that they are harmonious, construing provisions in light of the whole statute. *State v. Fouse*, 120 Wis. 2d 471, 477, 355 N.W.2d 366 (Ct. App. 1984). We have also held that the location of the subsection is of significance in construing a statute. *Id.* We discern, therefore, a stronger relationship between Wɪs. Sᴛᴀᴛ. § 183.0404 and Wɪs. Sᴛᴀᴛ. § 183.0402, which appear in the same subchapter, titled "Rights and Duties of Members and Managers." Wɪs. Sᴛᴀᴛ. ch. 183, subch. IV. With regard to conflicts of interest, this subsection states:

> **Duties of managers and members.** Unless otherwise provided in an operating agreement:
>
> **(1)** No member or manager shall act or fail to act in a manner that constitutes any of the following:
>
> (a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.

Wɪs. Sᴛᴀᴛ. § 183.0402.

¶ 19. WISCONSIN STAT. § 183.0402 provides the standard to apply when determining who is "precluded from voting" under WIS. STAT. § 183.0404(3). The plain language of this subsection does not prevent a member who has a material conflict of interest from dealing with matters of the LLC. The statute does, however, prohibit that member from *dealing unfairly* with the LLC or its members. Because this standard appears in the same subchapter as the voting procedure, we conclude that the statutes do not prevent a member from voting when there is a material conflict of interest. We hold that a member with a conflict of interest must vote his or her ownership interest fairly, considering the interests of the LLC and the relationship with the other members.

¶ 20. In the case at hand, we turn to the undisputed facts. Paul and Julie, voting as members of New Jersey LLC, transferred the property to 2005 New Jersey LLC. Gregory, the only member without a conflict of interest, was unaware of the transfer before it occurred and did not vote on the transfer. This was the only property owned by New Jersey LLC at the time of the transaction. Paul and Julie did not market the property to third party potential buyers, they did not write an offer to purchase, they did not require a new appraisal of the property to determine a fair value, and they did not apply for a new mortgage. Paul and Julie are the only two members of 2005 New Jersey LLC, and both have increased their ownership interest in the property as a result of the transfer. Julie's interest has increased from fifty percent to sixty percent, giving her

a controlling interest that she did not previously possess. These facts demonstrate unfair dealing in two respects.

¶ 21. First, the record establishes that this was not an arm's length transaction. Paul conceded as much in his testimony, stating that the transfer did not meet his own definition of an arm's length transaction: "When a buyer and a seller are not related and make an offer and acceptance." Paul's definition is on point. The term "arm's length" is defined as "not closely or intimately connected or associated." *Siker v. Siker*, 225 Wis. 2d 522, 533, 593 N.W.2d 830 (Ct. App. 1999) (citation omitted). We also agree that an offer and acceptance, as well as an independent appraisal, are harbingers of an arm's length transaction. Our supreme court has defined an "arm's-length transaction" as "a *sale in the open market* between an owner willing but not obliged to sell and a buyer willing but not obliged to buy." *Flood v. Lomira Bd. of Review*, 153 Wis. 2d 428, 436, 451 N.W.2d 422 (1990) (emphasis added). Because this was not a sale on the open market, nor does it carry any of the trappings of a sale made under "normal conditions," it does not meet the definition of an arm's length transaction. *See id.* at 437. This, combined with the personal interest served by the transfer, leads us to conclude that Paul and Julie did not deal fairly with New Jersey LLC.

¶ 22. Second, the sale of the property makes it impracticable for the New Jersey LLC to carry on with its intended business. New Jersey LLC was formed to hold the 2005 New Jersey Avenue property as a long-term investment. WISCONSIN STAT. § 183.0902(1) provides grounds for judicial dissolution of an LLC, a remedy not sought in this matter, yet instructional for

our analysis. The statute states that a court may order dissolution when it is established that "it is not reasonably practical to carry on the business of the limited liability company." Sec. 183.0902(1). Paul and Julie's conduct functionally dissolved the New Jersey LLC.

¶ 23. In the absence of either an operating agreement provision on dissolution procedures, a judicial dissolution, or dissociation of a member from the LLC, dissolution requires the written consent of all members. WIS. STAT. § 183.0901(2). Paul and Julie's failure to obtain Gregory's consent for the sale of the sole company asset, without which the purpose of New Jersey LLC was compromised, further establishes unfair dealing with the LLC and Gregory, contrary to WIS. STAT. § 183.0402(1)(a).

¶ 24. Because we conclude that the transaction was unlawful under WIS. STAT. §§ 183.0402(1)(a) and 183.0404(3), we do not reach the issue of whether Paul and Gregory each held a twenty-five percent ownership interest in New Jersey LLC, or whether the term "collectively" in the Member's Agreement means that both brothers must jointly vote the entire fifty percent.

## REMEDY

¶ 25. Paul and Julie also challenge the remedy applied by the trial court. The trial court ordered 2005 New Jersey LLC to return the property to New Jersey LLC. Paul and Julie argue that the result will be a deadlocked LLC, where Gregory can prevent the sale of the property indefinitely. They state that the only two options are repayment of any "improper" personal profits realized by Paul and Julie, pursuant to WIS. STAT. § 183.0402(2), or judicial dissolution pursuant to WIS. STAT. § 183.0902.

¶ 26. We disagree that a return of the property will necessarily deadlock New Jersey LLC and make it impossible to sell the property. As explained above, the transaction can be accomplished if fairness is demonstrated through an arm's length transaction. Of course, if the property is put on the market, Paul and Julie run the risk that 2005 New Jersey LLC will be outbid by a third party, but that is a "normal condition" of a real estate sale. Furthermore, the transaction was not binding because Paul and Julie had no authority to act on behalf of the New Jersey LLC in this matter:

> The act of any member, including the execution in the name of the limited liability company of any instrument . . . binds the limited liability company unless the member has, in fact, no authority to act for the limited liability company in the particular matter, and the person with whom the member is dealing has knowledge that the member has no authority to act in the matter.

WIS. STAT. § 183.0301(1)(b). The remedy ordered by the trial court is appropriate in light of the fact that the vote to transfer the property was not binding on New Jersey LLC.

## CONCLUSION

¶ 27. Paul and Julie, though they had a conflict of interest in the transfer of the property from New Jersey LLC to 2005 New Jersey LLC, were not precluded from voting to make the transfer. They were, however, required to vote their interest fairly. Because there was no arm's length transaction, specifically no independent appraisal of the property, in a transaction that functionally dissolved New Jersey LLC, unfairness is estab-

lished and the underlying vote was precluded under Wis. Stat. §§ 183.0402(1)(a) and 183.0404(3). For the reasons stated, we affirm the judgment compelling 2005 New Jersey LLC to return the property to New Jersey LLC and that New Jersey LLC reimburse Gregory for all legal expenses incurred in this litigation.

*By the Court.*—Judgment affirmed