COURT OF APPEALS
DECISION
DATED AND FILED

June 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    2024AP183

STATE OF WISCONSIN

Cir. Ct. No.  2023CV580

IN COURT OF APPEALS
DISTRICT IV

MIDWEST EXTERIOR RENOVATIONS, LLC,

    PLAINTIFF-RESPONDENT,

  V.

PROGRESSIVE CLASSIC INSURANCE COMPANY,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Progressive Classic Insurance Company appeals a circuit court order denying Progressive's motion to vacate a default judgment in

favor of Midwest Exterior Renovations, LLC. Progressive contends that the court erroneously exercised its discretion by refusing to grant relief from the judgment based on extraordinary circumstances under WIS. STAT. § 806.07(1)(h) (2023-24).[1] According to Progressive, the court erroneously exercised its discretion because it failed to properly consider the relevant factors set forth in *Miller v. Hanover Insurance Co.*, 2010 WI 75, 326 Wis. 2d 640, 785 N.W.2d 493. However, what Progressive is arguing, in essence, is that we should weigh the relevant factors differently than the circuit court did. This argument is not persuasive given our deferential standard of review, and we conclude that the court reasonably exercised its discretion. Accordingly, we affirm.

## *Background*

¶2      Midwest Exterior Renovations contracted with an individual named Omar Sosa and an entity called 2nd Chance Exteriors, LLC to perform home improvements. According to Midwest, Sosa and 2nd Chance breached this contract by performing deficient work. Midwest sued Sosa and 2nd Chance. Midwest also sued Progressive as a possible liability insurer for 2nd Chance. Progressive was served with Midwest's complaint on March 13, 2023.

¶3      On May 8, 2023, after Progressive had not filed a responsive pleading by the applicable deadline, Midwest moved for a default judgment against Progressive. On June 20, 2023, after Progressive had still not appeared in the action, the circuit court entered an order for the default judgment. Progressive received notice of the order for the default judgment by June 22, 2023, and on that same day the court also entered the final default judgment.

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

¶4    A little less than four months later, on October 13, 2023, Progressive appeared in the action and filed a motion to vacate the default judgment. Progressive asked the circuit court to grant relief from the judgment based on extraordinary circumstances under WIS. STAT. § 806.07(1)(h).   The circuit court denied the motion, and Progressive now appeals.

## Discussion

¶5    Our discussion below is in three parts.  First, we set forth the standard of review and the applicable law, including the factors under *Miller*.  Second, we summarize the circuit court's reasoning.   Third and finally, we explain why Progressive's arguments are not persuasive.

### A.  Standard of Review and Applicable Law

¶6    "Whether to grant relief from judgment under WIS. STAT. § 806.07(1)(h) is a decision within the discretion of the circuit court."  *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610.  "We will uphold the [circuit] court's exercise of discretion if it examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, arrived at a conclusion a reasonable judge could reach."  *Dickman v. Vollmer*, 2007 WI App 141, ¶27, 303 Wis. 2d 241, 736 N.W.2d 202.

¶7    WISCONSIN STAT. § 806.07(1) includes multiple provisions allowing circuit courts to grant relief from a judgment.   The relevant provision here, paragraph (1)(h), "is a 'catch-all' provision" that "'gives the [circuit] court broad discretionary authority and invokes the pure equity power of the court.'"  *Sukala*, 282 Wis. 2d 46, ¶9 (quoted source omitted).

¶8 "A court appropriately grants relief from a default judgment under para. (1)(h) when extraordinary circumstances are present justifying relief in the interest of justice." *Miller*, 326 Wis. 2d 640, ¶35. "The court should not interpret extraordinary circumstances so broadly as to erode the concept of finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants." *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 552, 363 N.W.2d 419 (1985). "A final judgment should not be hastily disturbed, but subsection (h) should be construed to do substantial justice." *Id.*

¶9 In *Miller*, our supreme court explained that there are five factors in particular that a circuit court should consider when deciding whether to grant relief from a judgment based on extraordinary circumstances: (1) "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant"; (2) "whether the claimant received the effective assistance of counsel"; (3) "whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments"; (4) "whether there is a meritorious defense to the claim"; and (5) "whether there are intervening circumstances making it inequitable to grant relief." *Miller*, 326 Wis. 2d 640, ¶36 (quoted source omitted).

¶10 The five *Miller* factors are not exclusive. *See id.* "The extraordinary circumstances test also directs courts to consider 'any other factors bearing upon the equities of the case.'" *Id.*, ¶58 (quoted source omitted). Additionally, in the context of a default judgment, the court must be cognizant that WIS. STAT. § 806.07(1) is "remedial in nature and should be liberally construed"; that "'the law prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the

issues'"; and that "'default judgments are regarded with particular disfavor.'" ***Id.***, ¶31 (quoted source omitted).

### B. Circuit Court's Reasoning

¶11     Here, the circuit court reasoned as follows regarding the five primary ***Miller*** factors and other relevant circumstances. As to the first factor, the court found that Progressive did not conscientiously or deliberately default. However, the court also found that Progressive's default was due solely to Progressive's own internal errors. By Progressive's own admission, it defaulted because it failed to internally process Midwest's complaint in the proper manner.

¶12     The circuit court also noted that even after Progressive became aware of the default judgment, it waited several months before seeking relief from the court. The court acknowledged that Progressive's explanation for this delay was that Progressive was conducting an internal investigation. However, the court appeared to reason that Progressive waited longer than it reasonably should have to seek relief.

¶13     As to the second factor—whether Progressive received effective assistance of counsel—the court concluded that this factor weighed in favor of Midwest because Progressive never claimed that it lacked the effective assistance of counsel. Rather, Progressive failed to properly process Midwest's complaint, then waited several more months to seek relief even after becoming aware of the default judgment. The court contrasted these circumstances with those involving a default judgment against a pro se defendant who might not understand the proper procedures.

¶14     As to the third factor—whether there was a judicial consideration of the merits and whether the interest of deciding the case on the merits outweighed the finality of judgments—the court acknowledged that there had been no consideration of the merits.  However, the court stopped short of concluding that the interest of deciding the case on the merits outweighed the need for finality.

¶15     As to the fourth factor—whether Progressive had a meritorious defense to Midwest's claims—the circuit court accepted as true Progressive's allegation that it had a meritorious defense.  Specifically, the court accepted as true that Progressive had a meritorious defense because, although Progressive was listed as the insurer on the relevant certificate of insurance, Progressive was not actually the insurance company that issued the relevant policy.[2]  However, the court weighed Progressive's meritorious defense against other factors.  The court noted that Progressive conceded that Midwest used due diligence in naming Progressive as the insurer.  The court also reiterated that the default judgment resulted from Progressive's own error and that Progressive waited several months after the default judgment was entered before alerting the court.

¶16     As to the fifth factor—whether there are intervening circumstances making it inequitable to grant relief—the circuit court noted that after the default judgment was entered, Progressive failed to respond to repeated communications from Midwest's counsel.  Rather, Progressive ignored those communications until

---

[2] Under *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 363 N.W.2d 419 (1985), when a party moves for relief from a judgment under WIS. STAT. § 806.07(1)(h), the circuit court must either accept the motion's allegations as true or hold an evidentiary hearing on the allegations. *Id.* at 553, 557; *see also Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶10, 282 Wis. 2d 46, 698 N.W.2d 610.  Here, Progressive does not argue that the court failed to accept as true the allegation that Progressive had a meritorious defense.  On the contrary, Progressive asserts that the court "found that … Progressive had a meritorious defense to the claim; namely, that it did not issue an insurance policy to the Defendants."

filing its motion to vacate the default judgment. Finally, the court stated that after "looking at the entirety of the case," it had concluded that Progressive's motion to vacate the default judgment should be denied.

### C. Progressive's Arguments

¶17 In arguing that this was an erroneous exercise of discretion, Progressive asserts that the circuit court's decision is unreasonable because "the circuit court's ruling, in essence, is that a default judgment against the wrong party with no liability for the claim is appropriate punishment for the party's failure to move the court for relief from judgment until four months after judgment is entered." Progressive argues that the court narrowly focused on this four-month lapse of time, while "ignoring" the important factor underlying Progressive's motion, "namely, that the judgment was entered against a party without liability for the claim." Progressive also argues that the court failed to adequately explain *why* Progressive's four-month delay made relief from the default judgment inequitable.

¶18 We are not persuaded, and we conclude that Progressive's arguments are at best an oversimplification, and at worst a misrepresentation, of the circuit court's reasoning. The court's decision shows that the court considered not only Progressive's four-month delay in seeking relief after receiving notice of the default judgment, but also a variety of other relevant factors, including Progressive's meritorious defense (as alleged), Midwest's due diligence in naming Progressive as a defendant, Progressive's failure to properly process Midwest's complaint, Progressive's access to effective assistance of counsel, and Progressive's failure to respond to repeated communications from Midwest's counsel.

¶19 Progressive argues that it was not served with Midwest's motion for a default judgment and that it therefore lacked the opportunity to respond to the

7

motion. However, Progressive conceded in the circuit court that service of the motion was not required under applicable law. More to the point, nothing in the court's decision indicates that the court considered Progressive's failure to respond to the motion as a significant factor. Rather, the court focused on Progressive's other conduct. Progressive cannot seriously argue that the court erred by placing considerable weight on this other conduct, especially considering the concessions that Progressive made regarding its conduct. Most notably, Progressive's counsel candidly acknowledged to the court that it did "not have a great explanation" for waiting as long as it did to seek relief from the judgment.[3]

¶20     Next, Progressive argues that its access to the effective assistance of counsel should not weigh against it, contrary to the circuit court's determination. The logic underlying this argument is difficult to follow. On the one hand, Progressive concedes that it "does not assert that it did not have access to effective assistance of counsel to properly answer the Complaint." On the other hand, Progressive appears to argue that its access to effective counsel should not weigh against it because it did not intentionally forgo counsel. Rather, Progressive explains, it "mistakenly failed to assign counsel" to defend against Midwest's complaint.

---

[3] When the circuit court posited to Progressive's counsel that "you could have contacted the Court" and that "months and months have gone by," counsel responded as follows:

> And I agree with that. Unfortunately, instead of contacting the Court or opposing counsel as the first step, Progressive went into an investigation mode. They were looking at all the faxes that had gone through and was trying to figure out how did this happen, so that I could come to the Court and give an explanation. Unfortunately, I do not have a great explanation for the Court.

¶21     As an initial matter, we note that Progressive does not show that it raised these arguments relating to its access to counsel in the circuit court. Regardless, Progressive does not persuade us that the court erred in considering Progressive's access to effective counsel as a factor weighing against Progressive. Progressive cites no authority that would prevent the court from weighing the effective counsel factor against Progressive in circumstances like those here. The court's decision shows that the court understood the essential facts relating to Progressive's access to counsel. Nothing in the court's decision indicates that the court erroneously thought that Progressive had assigned counsel to respond to Midwest's complaint or that Progressive intentionally declined counsel at any point in time. The court simply explained, and reasonably so, that Progressive's circumstances differed from those involving a default judgment against a pro se defendant who might not understand the proper procedures.

¶22     Next, Progressive argues that the circuit court failed to make a finding that Midwest would be prejudiced by vacating the default judgment. Progressive also argues that vacating the default judgment would not prejudice Midwest's ability to bring a claim against the proper insurer. We are not persuaded by these arguments for two main reasons.

¶23     First, although prejudice is a relevant consideration, *see **Miller***, 326 Wis. 2d 640, ¶57, Progressive points to no authority that requires the circuit court to make an express finding of prejudice in every case. Second, although the court did not use the word "prejudice," the court's reasoning implies a finding that vacating the judgment would be highly inequitable to Midwest considering all of the circumstances.

¶24 What Progressive is arguing, in essence, is that we should weigh the relevant factors differently than the circuit court did. This argument is not persuasive given our deferential standard of review. Progressive does not show that the court considered any improper factors, that the court's decision was based on a mistaken view of the facts or the law, or that the court's decision was otherwise unreasonable. The question is whether the circuit court reasonably exercised its discretion, not whether a different decision might also have been reasonable.

¶25 For all of the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.